**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JAMARR R. STONE,

      **Plaintiff,**

      v.

OHIO PAROLE BOARD, et al.,

      **Defendants.**

                **Civil Action 2:21-cv-884
Judge James L. Graham
Magistrate Judge Kimberly A. Jolson**

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 58) and Motion for Summary Judgment (Doc. 54). For the following reasons, the Undersigned **RECOMMENDS** that the Motion to Dismiss and Motion for Summary Judgment be **GRANTED**.

**I.    BACKGROUND**

The Undersigned elsewhere summarized the background giving rise to this action:

Plaintiff is a *pro se* prisoner currently incarcerated at Madison Correctional Institution. (Doc. 53). At the time he initiated this suit, on March 2, 2021, against eighteen Defendants, he was incarcerated at the Trumbull Correctional Institution. (Doc. 1-2). On an initial screen, the Undersigned recommended that all claims be dismissed except for Plaintiff's 1st Amendment retaliation and 14th Amendment due process claims against five Defendants—Ohio Department of Rehabilitation and Corrections ("ODRC") Director Annette Chambers-Smith, Warden Tashawn Eppinger, Program Specialist Jeanette Franklin, Mailroom Staff Olivia Jennings, and Corrections Officer Cimmento—and ordered that Plaintiff amend his Complaint to more specifically set forth the factual allegations supporting those claims. (Doc. 9 at 6). Plaintiff filed an Amended Complaint (Doc. 12), and the District Judge adopted the recommendation (Doc. 35).

The following allegations are taken from Plaintiff's Amended Complaint. Plaintiff requested that his security level be lowered in light of the COVID-19 virus, but that request was ignored by Defendant Chambers-Smith due to "retaliation, failure to act, and/or deliberate indifference . . . ." (Doc. 12, ¶¶ 16–17). Defendants Chambers-Smith, Eppinger, and Franklin were variously involved in the failure to collect and transmit Staff Hearing Input Letters supporting Plaintiff's parole to the Ohio Parole Board, which deprived Plaintiff of a meaningful parole hearing and

violated his due process rights. (*Id.*, ¶¶ 18–24). Defendant Franklin also failed to advise members of the Ohio Parole Board of their failure to adhere to ODRC policies. (*Id.*, ¶ 27). Defendants Jennings and Cimmento retaliated against Plaintiff in violation of the 1st Amendment by photocopying his legal mail and withholding his "legal disk," respectively. (*Id.*, ¶¶ 25–26). Plaintiff seeks monetary and declaratory relief. (*Id.*, ¶¶ I.A–G).

(Doc. 62 at 1–2).

Previously, the Court denied a motion for partial summary judgment brought by Plaintiff, because genuine disputes of material fact existed regarding threshold issues of Plaintiff's waiver of claims in the Ohio Court of Claims and *res judicata*. (*See* Docs. 62, 67). Yet, before the Court undertook a more fulsome consideration of those issues, it ordered further factual development. (Doc. 62 at 5). Accordingly, recommendations on Defendants' pending Motions to Dismiss for Lack of Jurisdiction (Doc. 58) and Motion for Summary Judgment (Doc. 54) were held in abeyance. (Doc. 62 at 5).

Particularly—because Defendants raised questions about the involvement of Plaintiff's former parole hearing counsel, Richard R. Parsons, in Plaintiff's subsequent litigation choices—the Court ordered Plaintiff to submit a waiver of his attorney-client privilege with Mr. Parsons as it related to advice he received about pursuing claims related to his parole hearings in subsequent litigation. (Doc. 70). Plaintiff provided such waiver to the Court and to his former counsel (Doc. 71), and Mr. Parsons submitted an affidavit to the Court detailing the nature of his representation and advice to Plaintiff (Doc. 73).

Now that the record has been more fully developed, the Undersigned considers Defendants' Motion to Dismiss (Doc. 58) and Motion for Summary Judgment (Doc. 54). Plaintiff has responded to each (Docs. 59, 56), and the motions are ripe for consideration.

## II.     STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move to dismiss for lack of subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  Jurisdictional challenges under that Rule come in two forms, facial and factual.  *See Hanrahan v. Mohr*, No. 2:13-cv-1212, 2015 WL 1476551, at *2 (S.D. Ohio Mar. 31, 2015) (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)).  Here, Defendants have raised a facial challenge because they argue that, as a matter of law, Plaintiff has waived his federal claims by filing in the Ohio Court of Claims, and that his claims should otherwise be dismissed under principles of claim and issue preclusion.  (*See* Doc. 58 at 3).  As such, the Court need not look outside the pleadings to decide whether it has jurisdiction, and it must consider all of Plaintiff's allegations as true.  *See Hanrahan*, 2015 WL 1476551, at *2 (citing *RMI Titanium Co.*, 78 F.3d at 1134).  Ultimately, "the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *King v. Corp. of U.S. of Am.*, No. 05 CV 72849 DT, 2005 WL 3320866, at *1 (E.D. Mich. Dec. 7, 2005) (citing *Mich. S. R.R. Co. v. Branch & St. Joseph Ctys. Rail Users Ass'n., Inc.*, 287 F.3d 568, 573 (6th Cir. 2002)).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id*. at 255.  (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).  A genuine issue of material fact exists

if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (defining "genuine" as more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III. MOTION TO DISMISS (DOC. 58)

Defendants say that "Plaintiff's filing of . . . other lawsuits in the Ohio Court of Claims and the Franklin County Court of Common Pleas . . . based on the same alleged acts and omissions of Defendants . . . constitutes a waiver of his federal claims." (Doc. 58 at 3). As Defendants note, the state court lawsuits were "based on the same facts and circumstances as this case," and in both Plaintiff "argu[ed] that he was denied meaningful parole consideration and [sought] reimbursement for his legal expenses." (*Id.*; *see also* Docs. 58-1, 58-3). Yet, Plaintiff's claims in the present litigation go beyond those related to his parole consideration. Plaintiff has also alleged claims related to his legal mail and conditions of confinement. (*See* Doc. 12). Accordingly, for the reasons that follow, the Undersigned recommends that all claims related to Plaintiff's parole consideration be found waived and dismissed for lack of subject-matter jurisdiction. Alternatively, the entirety of Plaintiff's case may be resolved on its merits, as the Undersigned will detail in the Motion for Summary Judgment section of this Report and Recommendation.

### A. Leaman *Doctrine*

In the Ohio Court of Claims Act, the state waives its sovereign immunity and consents to be sued in the Court of Claims. *Leaman v. Ohio Dept. of Mental Retardation & Developmental Disabilities*, 825 F.2d 946, 951 (6th Cir. 1987). The Act states:

4

> "[t]he state hereby waives its immunity from liability . . . and consents to be sued, and have its liability determined, in the court of claims[.]  [F]iling a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, that the filing party has against any officer or employee[.]

O.R.C. § 2743.02.  This waiver of the State's immunity creates a *quid pro quo* arrangement in which the plaintiff agrees to waive his claims in other courts in consideration for receiving a solvent Defendant in state court.  *Leaman*, 825 F.2d at 954 (quotations omitted).  This waiver of federal claims is effective upon the plaintiff's filing of the claim in the Ohio Court of Claims.  O.R.C. § 2743.02.

Importantly, a waiver must be "knowing, intelligent, and voluntary."  *Id.* at 956.  Where a plaintiff is represented by counsel, such waiver is presumed.  *Id.*  But where a plaintiff is proceeding *pro se*, there is no presumptive waiver.  *Kajfasz v. Haviland*, 55 F. App'x. 719, 722 (6th Cir. 2003).  Instead, the court must make a factual finding that the waiver of federal claims was knowing, intelligent, and voluntary.  *Id.*  Specifically, courts consider the plaintiff's "prior litigation experience, the coherency of his filings in both the federal and Court of Claims matters, and whether the litigant referenced the statutory waiver provision in the filings."  *Harris v. Sowers*, No. 2:16-cv-888, 2022 WL 1637564, at *3 (S.D. Ohio May 24, 2022) (quoting *Troche v. Crabtree*, No. 1:12-cv-176, 2014 WL 2211012, at *3 (S.D. Ohio May 28, 2014)).  Ultimately, a finding of waiver follows if the court determines that a plaintiff has "an above-average understanding of the law for a *pro se* litigant."  *Id.* (quoting *Williams v. Smith*, No. 05-CV-845, 2006 WL 2192470, at *10).

It is undisputed that Plaintiff brought claims based on the same acts or omissions at issue in the present litigation before the Ohio Court of Claims.  Plaintiff distinguishes the Court of Claims litigation from the present litigation by noting it was: (1) brought against only the Ohio Parole Board as a state entity; and (2) requested only monetary damages, not declaratory or

injunctive relief. (Doc. 59 at 7). Yet, neither of these points address the acts or omissions underlying the claims and—as to those factual allegations—Plaintiff acknowledges that the Court of Claims complaint is largely a "copy and paste" of the complaint in the present action. (*Id.* at 6). Plaintiff filed the Court of Claims complaint on March 15, 2021 (Doc. 58-1), and the act of filing "results in a complete waiver of any cause of action, based on the same act or omission," O.R.C. § 2743.02(A)(1). Thus, waiver of Plaintiff's federal claims occurred on March 15, 2021, so long as his waiver was knowing, intelligent, and voluntary. Plaintiff maintains that he was unaware of the consequences of filing in the Ohio Court of Claims. (Doc. 59 at 9). But Defendants say Plaintiff's complete litigation of his claims before the Ohio Court of Claims, as well as their belief that Plaintiff "received at least some advice from counsel regarding his dissatisfaction with parole hearings," demonstrates a knowing, intelligent, and voluntary waiver. (Doc. 58 at 7–8).

First, the Court addresses the assistance of counsel. Though Plaintiff is proceeding *pro se*, Defendants have suggested he received at least some assistance from his former counsel in navigating the litigation subsequent to his parole hearing. It is clear from the record and Mr. Parsons's declarations that his scope of representation was limited to Plaintiff's parole hearings. (Doc. 58-1 at 6) (Fee Agreement detailing scope of representation); (Doc. 73, ¶¶ 4–6) (Parsons Affidavit). Mr. Parsons further confirms that he did not review any of Plaintiff's *pro se* complaints, nor did he "shadow draft" any of the pleadings. (*Id.*, ¶ 21). Presumption of waiver is therefore not appropriate against Plaintiff.

Yet, Mr. Parsons does represent that he advised Plaintiff of his recourse to file a request for reconsideration before the Ohio Parole Board and reviewed Plaintiff's *pro se* request for reconsideration and provided comments. (*Id.*, ¶¶ 8, 10). He further advised Plaintiff that if his request was unsuccessful, he could pursue additional relief in the Franklin County Court of

Common Pleas, and provided Plaintiff with supporting caselaw and sample pleadings for that state court remedy. (*Id.*, ¶¶ 8, 11–12). And he answered Plaintiff's logistical questions about filing in the Court of Common Pleas. (*Id.*, ¶¶ 15, 17). In other words, though Mr. Parsons never provided Plaintiff with specific advice related to the Ohio Court of Claims, Plaintiff had a lawyer whom he could have contacted if he had concerns about that litigation. The fact that he never did suggests that he was self-sufficient in informing himself about his Court of Claims litigation. Though the Undersigned finds that a knowing, intelligent, and voluntary waiver is supported by Plaintiff's litigation experience and the nature of his pleadings alone, the fact that Mr. Parsons was available support to Plaintiff further bolsters that finding.

More significantly, Plaintiff is an experienced litigant, and his filings are coherent and demonstrate an above-average understanding of the law for a *pro se* litigant. This is not Plaintiff's first suit before this Court. He previously filed a petition for writ of habeas corpus, which he litigated *pro se* for over two years, until it was ultimately denied. *Stone v. Warden*, No. 3:08-cv-00364. Additionally, he brought a civil rights action under 28 U.S.C. § 1983. *Stone v. Collier, et. al.*, No. 2:19-cv-00401. That action lasted for nearly two years. Notably, though Plaintiff was proceeding *pro se*, he had claims which survived the Court's initial screening, he proceeded through discovery and summary judgment briefing, and he ultimately resolved the case through a private settlement agreement and stipulation of dismissal with the defendants.

Plaintiff is also experienced outside this Court. Regarding simply the acts or omissions involved in the present litigation, Plaintiff has filed three state court cases: the one in the Ohio Court of Claims, *Stone v. Ohio Parole Board*, No. 2021-00134AD; and two in the Franklin County Court of Common Pleas, *Stone v. Ohio Parole Board*, Nos. 21CV001641, 21CV003074.

In the present action, Plaintiff's Amended Complaint is coherently organized with headings and supported by detailed factual allegations and citations to relevant federal jurisdictional statutes, the Federal Rules of Civil Procedure, and the Ohio Administrative Code. *See Harris*, 2022 WL 1637564, at *4 (citing *Brooks v. McCoy*, No. 1:15-CV-39, 2015 WL 4538512, at *4 (S.D. Ohio July 27, 2015)) (noting that organization and the identification of applicable statutes are signs of an experienced litigator). Plaintiff's Ohio Court of Claims complaint was similarly sophisticated, and though it did not cite to the waiver statute directly, it otherwise demonstrated an understanding of the jurisdiction and function of the Ohio Court of Claims. (*See* Doc. 58-1). As Plaintiff himself notes, a distinguishing feature of his Ohio Court of Claims litigation is its named defendant. He brought his claims against only the Ohio Parole Board "as a state entity." (Doc. 59 at 7). This practice is consistent with a subsection of the waiver statute, O.R.C. § 2743.02(E), which states, "[t]he only defendant in original actions in the court of claims is the state." A preceding subsection, O.R.C. § 2743(A)(1) describes the now at-issue waiver of Plaintiff's claims. ("[F]iling a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, that the filing party has against any officer or employee[.]" Thus, Plaintiff's choice to sue only a state entity (as opposed to the numerous individual Defendants joined to the present action) suggests a familiarity with the statutes governing the Ohio Court of Claims, and the waiver statute in particular. *See Harris*, 2022 WL 1637564, at *4 (quoting *Jones v. Ohio*, No. 1:19-CV-1913, 2020 WL 264264, at *3 (N.D. Ohio Jan. 17, 2020) (describing how the plaintiff's choice to sue only ODRC in the Ohio Court of Claims, while many individual defendants were joined in the complaint in federal court, "evinces a knowledge that the waiver statute only permits actions against the state.").

Moreover, in litigating before the Court of Claims, Plaintiff cited to the court's local rules as he variously: moved for default, responded to the Ohio Parole Board's report, and requested reconsideration of the court's decision. *See* Motion for Default Judgment, Response to Investigation Report, Motion for Court Review, *Stone v. Ohio Parole Board*, No. 2021-00134AD. These local rules note at the outset "the special statutory procedure set forth in [O.R.C.] Chapter 2743," which includes the waiver statute. L.C.C.R. 1(A). Still more, the local rules directly reference the waiver statute, O.R.C. § 2743.02. L.C.C.R. 4(A)(1), 4.1. Plaintiff's familiarity with the local rules of the Ohio Court of Claims suggests a familiarity with the Ohio Court of Claims governing statutes, including the waiver statute.

In sum, Plaintiff is an experienced litigant, with an above-average understanding of the law for an individual proceeding *pro se*. His filings are coherent and well-supported by relevant statutes and rules. The Undersigned therefore finds that Plaintiff's waiver of claims was knowing, intelligent, and voluntary. Because Plaintiff waived his federal claims by litigating them in the Ohio Court of Claims, the Undersigned **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** and Plaintiff's parole consideration claims be **DISMISSED**.

## B. *Claim and Issue Preclusion*

Defendants further argue that issue and claim preclusion related to the state cases bar the adjudication of the present litigation. (Doc. 58 at 9–13). Because is has been recommended that the parole consideration claims be dismissed under the *Leaman* doctrine—and will be further recommended below, alternatively, that the entirety of the case be resolved in favor of Defendants based on the merits of Plaintiff's claims—the Undersigned need not undertake a close examination of claim and issue preclusion to issue a recommendation.

9

## IV.     MOTION FOR SUMMARY JUDGMENT (DOC. 54)

Plaintiff brings claims arising under the First, Eighth, and Fourteenth Amendments against Defendants.  (*See* Doc. 12).  Particularly, he alleges that Defendants interfered with his legal mail and retaliated against him in violation of the First Amendment, that his conditions of confinement violated the Eighth Amendment, and that Defendants' actions related to his parole board hearings violated his rights to due process and equal protection under the Fourteenth Amendment.  (*See id.*).  Though the Undersigned has recommended that Plaintiff's parole consideration claims be dismissed, Defendants are alternatively entitled to summary judgment on those claims. Additionally, Defendants are entitled to summary judgment on the legal mail and conditions-of-confinement claims, which exceed the scope of the Motion to Dismiss.  The Court addresses each constitutional claim in turn.

### A.  Fourteenth Amendment: Due Process

Plaintiff alleges his due process rights were violated by actions involving both his parole hearing and the control of COVID-19 within TCI.  Regarding his parole hearing, he says Defendants Franklin and Eppinger failed to transmit Staff Hearing Input Forms prepared on Plaintiff's behalf to the OPB and otherwise failed to act when those materials were not ultimately before the OPB at the hearing.  (Doc. 12, ¶¶ 31–32).  He further says that Defendant Chambers-Smith failed to ensure that the policies related to the Staff Hearing Input Forms were followed. (*Id.*, ¶ 29).

The Due Process Clause of the Fourteenth Amendment provides that a person may not be deprived of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Plaintiff's due process claims regarding the Defendants primarily involve his parole hearing and a provision of ODRC policy which states:

> DRC employees may provide input concerning an inmate's Parole Board release consideration hearing by creating and routing a Warden Hearing Input Form (DRC3032) or a Staff Hearing Input Form (DRC3031) through the electronic forms application.  A Staff Hearing Input Form (DRC3031) shall be reviewed and approved by the institution's managing officer or designee prior to being routed to the Parole Board.

(Doc. 1-17 at 34).  Defendant Franklin, who was TCI's Program Specialist and Temporary OPB Hearing Officer, completed a Staff Hearing Input Form on behalf of Plaintiff.  (Doc. 1-18 at 28). When Plaintiff asked Defendant Franklin to check the status of her submitted form on the electronic forms application, she saw it was marked "unopened" and inquired further about it to Jennifer Clemans, a quality assurance analyst for the OPB.  (*Id.*).  Clemans was unsure why the form was displaying as unopened, but confirmed that "the staff input form [Franklin] submitted was received, saved digitally and made available for the Board's review."  (*Id.*).  Unsatisfied with this answer, Plaintiff raised his concerns with Defendant Eppinger, who told him that those forms were "filled out by the staff member and . . . directly routed to the [OPB]" and did not pass through Eppinger's office.  (Doc. 43-1 at 9).  Plaintiff says the forms never reached the OPB, and that failure violated ODRC policy and Ohio law.  (*Id.*, ¶ 19, 34–37).  Ultimately, he says, the actions of Defendants Eppinger and Franklin "denied Plaintiff a meaningful opportunity at parole."  (*Id.*, ¶ 35).

Essentially, Plaintiff alleges that because the forms were marked on the electronic forms application as "unopened," they were never transmitted to the members of the OPB.  This does not necessarily follow, as Jennifer Clemans stated that—despite the status displayed on the electronic forms application—the forms were received and forwarded to the OPB for review.  (Doc. 1-18 at 28).  Yet, accepting Plaintiff's allegation as true, the failure to transmit the forms would appear to lay with Clemans, not with Defendants Franklin and Eppinger.  The only way Plaintiff directly involves the Defendants in his allegations is through the suggestion that Defendant Eppinger was

responsible for "routing" the forms to the OPB. (Doc. 56 at 7–8). But Defendant Eppinger denied that he was responsible for the routing, stating that the Staff Hearing Input Form "is filled out by the staff member and . . . directly routed to the [OPB]. This form does not come through the Warden's Office." (Doc. 43-1 at 9). Plaintiff has not rebutted this with countervailing evidence. In fact, the Chair of the OPB, Alicia Handwerk, admitted that the OPB quality assurance analyst was responsible for "the proper collecting, storing, and forwarding of documents delivered to the [OPB]" and that Jennifer Clemans served in that position. (Doc. 43-2 at 18–19).

Defendant Franklin might have ostensibly held responsibilities as the Temporary OPB Hearing Officer, but the evidence before the Court only establishes that she was "obligated to ensure that Plaintiff received any and all documentation from [the OPB as it related to his hearing.]" (Doc. 43-2 at 10). In other words, she was responsible for the flow of information from the OPB to Plaintiff, but not vice versa. Though Plaintiff further suggests that Franklin and Eppinger's "failure to act" denied him due process, it is unclear what precise course of action he believes they should have taken.

Even if Defendants failed to follow ODRC policy, that failure is "not in and of itself a constitutional violation." *McDougald v. Davis*, No. 2:16-CV-545, 2018 WL 1899229, at *7 (S.D. Ohio Apr. 20, 2018); *see also Robison v. Coey*, No. 2:15-CV-944, 2015 WL 5437175, at *10 (S.D. Ohio Sept. 14, 2015) (citing *Laney v. Farley*, 501 F.3d 577, 581 n. 2 (6th Cir. 2007)) ("An alleged failure to comply with an administrative rule or policy does not rise to the level of a constitutional violation."); *Haight v. Thompson*, No. 5:11CV–P118–R, 2011 WL 4473143 at *3 (W.D. Ky. Sept. 26, 2011) ("A prison official's failure to follow internal rules and regulations does not alone state a constitutional violation..."). Section 1983 does not provide a remedy for alleged violations of state laws or regulations. *See Williams v. Burgess*, No. 5:21-cv-99, 2021 WL

12

5816830, at *4 (W.D. Ky. Dec. 7, 2021) (citing *Laney*, 501 F.3d at 580 n.2) ("The purpose of § 1983 is to remedy violations of federal law, not state law."); *Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate."). And "[c]ourts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure." *White v. Perron*, No. 2:20-cv-247, 2021 WL 3855589, at *9 (W.D. Mich. Aug. 30, 2021) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) and other cases). Thus, the "failure to comply with [a state] administrative rule or policy does not itself rise to the level of a constitutional violation." *Williams v. Burke*, No. 2:08-cv-123, 2009 WL 1788374, at *1 (W.D. Mich. June 18, 2009) (collecting cases).

Rather, the alleged lack of process can only rise to a federal constitutional deprivation of procedural due process if a protected liberty interest was at stake. In evaluating whether a cognizable procedural due process claim exists, the Court "first ask[s] whether there exists a liberty [ ] interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). As to the first requirement, it is well established that Ohio prisoners have "no constitutional or statutory right to parole." *State ex rel. Keith v. Ohio Adult Parole Auth.*, 24 N.E.3d 1132, 1137 (Ohio 2014). Still, prisoners can "raise certain procedural challenges to the methods used to reach a parole decision." *Jackson v. Hudson*, No. 2:18-cv-1319, 2019 WL 3521745, at *3 (S.D. Ohio Aug. 2, 2019); *see also Dotson v. Wilkinson*, 329 F.3d 463, 472 (6th Cir. 2003) ("[W]here a prisoner does not claim immediate entitlement to parole . . . but instead lodges a challenge to the procedures used

during the parole process as generally improper or improper as applied in his case . . . such a challenge [is] cognizable under section 1983.").

Yet, to the extent Plaintiff does allege an error in the procedural method used, it is a failure by the quality assurance analyst to forward all relevant materials, like the Staff Hearing Input Forms, and by the members of the Parole Board to review all the materials before them, including a memorandum prepared by his parole hearing counsel.  (Doc. 56 at 10) (Plaintiff requesting declaratory judgment that "he was denied a meaningful consideration for parole when the memorandum and Staff Hearing Input [Forms] were not view[ed] by OPB . . .").  But those individuals are not Defendants to this action, and Plaintiff has not demonstrated that Defendants Franklin and Eppinger were in any position to affect the process employed by the quality assurance analyst or the OPB, such that their "failure to act" establishes a claim for a violation of Plaintiff's procedural due process rights.

Plaintiff's allegations against Defendant Chambers-Smith regarding the Staff Input Hearing Forms involve her failure to uphold ODRC policy.  (Doc. 12, ¶ 29).  But, as described above, a failure to adhere to policy is not—in and of itself—a constitutional violation.  Moreover, to the extent Plaintiff has presented a procedural due process claim, it concerns the actions of non-parties—the OPB and its quality assurance analyst.  Plaintiff has not demonstrated that Defendant Chambers-Smith took any action, or failed to take any action, that directly affected the process afforded him at his parole hearing.  He does not claim that she had any direct knowledge that there was an issue with his Staff Input Hearing Forms, and indeed, the mechanics of an individual inmate's parole hearings are likely beyond the notice of the director of the ODRC.  Because he has failed to submit evidence which can establish that Defendants Franklin, Eppinger, or Chambers-

Smith took personal action which infringed upon his due process rights at his parole hearing, Defendants are entitled to summary judgment on these claims.

### B. Fourteenth Amendment: Equal Protection

Additionally, Plaintiff alleges that Defendants Franklin, Eppinger, and Chambers-Smith, through the same above actions, violated his right to equal protection under the Fourteenth Amendment.  (Doc. 12, ¶¶ 29, 31, 32).  Defendants say they are entitled to summary judgment on these claims because "Plaintiff fails to show or allege that he is a member of a protected class and/or that he was not provided equal protection on the basis of that protected class status."  (Doc. 54 at 7).  The Undersigned agrees that Plaintiff has not sufficiently alleged his equal protection claims and Defendants are entitled to summary judgment.

The Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.,* 470 F.3d 286, 299 (6th Cir. 2006)).  In other words, the threshold showing a plaintiff must make is that he experienced disparate treatment from a similarly situated person.  *See EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 864 (6th Cir. 2012).

Plaintiff has not attempted to identify any similarly situated comparator to support his equal protection claims.  Said differently, Plaintiff has alleged variously that Defendants' actions were unfair, lacked process, or otherwise failed to comply with statutes and administrative codes, but

he has not alleged that the way he was treated was disparate from other incarcerated persons facing review in front of the parole board or seeking a reclassification of their security status. Because he has failed to make this threshold showing, no reasonable jury could return a verdict in Plaintiff's favor on his equal protection claims, and Defendants are thus entitled to summary judgment.

## C. Eighth Amendment

Plaintiff briefly states a claim against Defendant Eppinger for failure, in light of the COVID-19 pandemic, "to issue and/or enforce mandatory masks and cleaning ordinances at TCI which led to the sickness of Plaintiff and hundreds of other TCI inmates and employees." (Doc. 12, ¶ 31). Though Plaintiff does not specifically identify a constitutional provision in connection with this claim, it is best understood as an Eighth Amendment conditions-of-confinement claim. This is consistent with the practice in this Court and the Sixth Circuit Court of Appeals. *See, e.g.*, *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020); *Shine-Johnson v. DeWine*, No. 2:20-cv-5919, 2022 WL 656567 (S.D. Ohio Mar. 4, 2022); *Smith v. DeWine*, 476 F.Supp. 3d 635 (S.D. Ohio 2020).

"The Eighth Amendment protects inmates by imposing duties on prison officials, who must provide humane conditions of confinement and adequate food, clothing, shelter, and medical care and take reasonable measures to guarantee the safety of the inmates." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013) (citation, alterations, and internal quotation marks omitted). "To state a claim for violation of the Eighth Amendment arising from conditions of confinement, a prisoner must plead (1) that 'the failure to protect from risk of harm [was] objectively sufficiently serious,' and (2) that 'the official acted with deliberate indifference to inmate health or safety.'" *Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012) (quoting *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010)). Regarding this subjective second element, "an inmate must show that prison officials had a sufficiently culpable state of mind." *Berkshire v.*

*Dahl*, 928 F.3d 520, 535 (6th Cir. 2019) (citations and internal quotation marks omitted).  In particular, the culpable state of mind is "more blameworthy than negligence," and is satisfied "if the official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).

Plaintiff satisfies the first element of his conditions-of-confinement claim.  "In the COVID-19 context, courts routinely have found that the objective component of a deliberate indifference claim has been met." *Shine-Johnson*, 2020 WL 656567, at *7 (collecting cases).  Yet, regarding the second element, Plaintiff has not adduced evidence of Defendant Eppinger's subjective intent.  He has not demonstrated that Defendant Eppinger's refusal or inability to enforce mask mandates and cleaning ordinances went beyond mere negligence and rose to the level of "recklessly disregarding [the] risk" COVID-19 posed to Plaintiff.  *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  Still more, the alleged inaction, that Defendant "failed to issue and/or enforce mandatory masks and cleaning ordinances" at the prison, does not—in and of itself— evince reckless disregard.  *See, e.g.*, *Shine-Johnson*, 2020 WL 656567, at *8–9 (finding that allegations that Defendant Warden failed to quarantine symptomatic prisoners, combined with purported statements he intended to let the virus "run its course" throughout the prison, sufficiently pled subjective intent to survive initial screening).  Plaintiff has not sufficiently alleged, let alone supported by evidence, the subjective intent required for his conditions-of-confinement claim.  No reasonable jury could return a verdict in Plaintiff's favor on his conditions-of-confinement claim, and Defendant Eppinger is thus entitled to summary judgment.

### D. First Amendment: Legal Mail

Plaintiff alleges that two mailroom employees impermissibly handled his legal mail.  He says that Defendant Jennings photocopied mail from his attorney and Defendant Cimmento

withheld his legal disc for over twenty-four hours.  (Doc. 12, ¶¶ 25, 26).

"A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives."  *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003) (citing *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992)).  Permissible restrictions include opening a prisoner's mail, so long as it is done "pursuant to a uniform and evenly applied policy with an eye to maintain prison security."  *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993)).  In contrast, an official who opens and reads a prisoner's mail in an "arbitrary and capricious fashion" violates that prisoner's First Amendment rights.  *Id.* at 873–74 (citing *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986)).

There must be an initial showing that the mail involves the prisoner's access to the courts or his relationship with his attorney, as "[n]ot all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights."  *Id.* at 874.  When it does, the prison's interest in security is balanced against the prisoner's constitutional rights.  *Id.*  "[E]ven constitutionally protected mail can be opened (although not read) and inspected for contraband.  The only requirement is that such activity must take place in the presence of the recipient, if such request has been made by the prisoner."  *Id.*

i.  *Defendant Jennings*

Plaintiff says that, on August 28, 2020, he was called to the mailroom to receive mail from his attorney.  (Doc. 43-2 at 48).  The mail included one envelope bearing Plaintiff's name, the name of his attorney's firm, and a "LEGAL MAIL" stamp.  (*Id.*).  Defendant Jennings, who was processing the mail, said that portions of the mail felt wet and had to be sent to an investigator because of a drug problem at TCI.  (*Id.*).  She made photocopies of the documents that felt wet and gave them to Plaintiff, along with the other contents of his mail.  (*Id.*).  When Plaintiff submitted

an inmate form regarding the incident, an ODRC reviewer affirmed that Defendant Jennings had followed proper procedures by screening suspicious mail. (*Id.*). When Plaintiff escalated the inmate form to a grievance, a separate reviewer granted the grievance and conceded that Defendant Jennings violated an ODRC policy which states that "Legal Mail shall never be copied." (*Id.*).

Regardless of whether Defendant Jennings violated ODRC policy, the question before the Court is whether she violated Plaintiff's First Amendment rights. As an initial matter, the Court finds that Plaintiff has supported that the mail in question was legal mail. The mail was sent by his attorney, and "mail from an attorney implicates a prisoner's protected legal mail rights." *Sallier*, 343 F.3d at 877 (citation omitted). Defendant Jennings interacted with the legal mail in two ways: first, by opening, inspecting, and withholding a portion of it for investigation; and second, by photocopying the withheld portion.

Defendant Jennings did not violate Plaintiff's constitutional rights by opening and inspecting legal mail in his presence, nor by sending a portion of it for further inspection after detecting the possible presence of contraband; this was all done in furtherance of a legitimate penological interest. *See Wolff v. McDonnell*, 418 U.S. 539, 577 (1974) ("The possibility that contraband with be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters."); *Sallier*, 343 F.3d at 874. Additionally, it was done pursuant to an ODRC policy. (Doc. 43-2 at 56) ("Legal mail shall be opened and inspected for contraband only in the presence of the inmate addressee . . .") Plaintiff has adduced no evidence to show that the policy was not uniform and evenly applied, nor that Defendant Jennings was otherwise acting in an arbitrary and capricious manner.

Defendant Jennings did not follow ODRC policy in making photocopies for Plaintiff of the suspect mail. (*See id.*) ("Legal Mail envelopes shall only be copied if there is a legitimate security

concern and only copied in front of the inmate, if possible.  The contents of Legal Mail should never be copied.").  But Plaintiff has not made any allegations suggesting how this infringed upon his relationship with his attorney or his access to the courts.  Notably, he makes no allegation that Defendant Jennings read his mail.  He further asserts that the photocopies were immediately produced to him, not that they were maintained by Jennings or ODRC.  In fact, by providing Plaintiff with photocopies, Defendant Jennings assured Plaintiff had immediate access to the contents of his legal mail, while it was investigated for contraband.  Plaintiff has offered no support for a finding that this amounts to a constitutional violation—nor does the Court find any.  *See Bray v. Mazza*, No. 4:21-CV-00119-JHM, 2022 WL 17836601 (W.D. Ky. Dec. 21, 2022) (finding a Kentucky prison policy of photocopying legal mail and destroying original mail to keep contraband from reaching inmates constitutionally permissible and granting summary judgment in favor of a mailroom supervisor who followed the policy).  Because no reasonable jury could find that Plaintiff's First Amendment rights were violated based on the evidence before the Court, Defendant Jennings is entitled to summary judgment.

Still more, all Defendants have asserted a defense of qualified immunity against Plaintiff's claims.  (Doc. 54 at 12–14).  The Sixth Circuit Court of Appeals has defined qualified immunity as a three-step inquiry:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Sallier*, 343 F.3d at 878 (internal quotation marks omitted) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).  As described above, Plaintiff has not adduced facts which, viewed in the light most favorable to him, show that a constitutional violation occurred.  But even were he able

to demonstrate that the photocopying had infringed on his constitutional rights, such right would not be a clearly established right of which a reasonable person would have known. For this reason, too, Defendant Jennings is entitled to summary judgment.

### ii. *Defendant Cimmento*

Plaintiff says another mailroom employee, Defendant Cimmento, withheld his legal disc for over twenty-four hours, before turning the disc over to two other ODRC employees. (Doc. 12, ¶ 26). Plaintiff has "fears of said individuals making illegal photocopies of his legal mail and distributing said documents to other TCI staff and/or inmates." This claim must fail for several reasons.

First, the Prison Litigation Reform Act ("PLRA") requires that actions under 42 U.S.C. § 1983 may not proceed "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e; *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Plaintiff has not adduced evidence showing he exhausted his administrative remedies with respect to this claim. In particular, he submitted no record of filing a grievance against Defendant Cimmento for withholding his legal disc.

Second, Plaintiff has not sufficiently supported, or even alleged, why the mail at issue should be treated as legal mail that implicated his constitutional rights. Beyond nominally referring to the mail as a "legal" disc, he makes no allegations about who sent the disc or what it contained. Based on the record before the Court, a reasonable jury could not find that Plaintiff's First Amendment rights were implicated by the mail.

Third, even were the Court to presume that Plaintiff's constitutional rights were implicated, he has not adduced evidence supporting that a constitutional violation occurred. Notably, he makes no allegation that the content of the legal disc was read by Defendant Cimmento, only that

Plaintiff has unsubstantiated fears that it may have been photocopied by Defendant or others. Without more, this is not enough to support a finding of a constitutional violation. And, based on the other evidence in the record, Defendant Cimmento appears to have been merely following an ODRC policy, which requires that "[l]egal mail containing a disc(s) that had not been pre-approved per Administrative Rule 5120-9-19, Printed Material, shall be treated as contraband by the institution mailroom." (Doc. 43-2 at 55). Plaintiff makes no allegation that his legal disc was pre-approved. In other words, the record supports only the conclusion that Defendant Cimmento was enforcing "a uniform and evenly applied policy with an eye to maintain prison security." *Sallier*, 343 F.3d at 873. For all these reasons, Defendant Cimmento is entitled to summary judgment.

### E. First Amendment: Retaliation

Plaintiff says that Defendant Chambers-Smith retaliated against him for an earlier-filed civil action he brought against her and other ODRC employees. (Doc. 12, ¶¶ 16–17, 29). Particularly, he says she retaliated by denying his request to have his security level lowered and to allow his transfer to a different facility. (*Id.*).

Retaliation against a prisoner for exercising his First Amendment rights violates the Constitution. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X*, 175 F.3d at 394. And, as with all 42 U.S.C. § 1983 claims, a plaintiff must show that the defendant was personally involved in the unconstitutional conduct, showing that "[a]t a minimum . . . the defendant at least implicitly authorized, approved, or knowingly acquiesced in

the unconstitutional conduct." *Johnson v. Hoffner*, No. 17-2102, 2018 WL 4488737, at *2 (internal quotation marks omitted) (quoting *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008)).

Plaintiff has only cursorily suggested Defendant Chambers-Smith's personal involvement in the alleged retaliatory decision. He says he sent two letters to Defendant, requesting his transfer from TCI in light of the danger posed by COVID-19 and inmate violence there. (Doc. 12, ¶ 17). Yet, he has failed to show that this was a proper mechanism by which to request a transfer and that Defendant ever received and considered such letters. Nor has he produced any rejection of the transfer request into evidence. Based on the evidence of record before the Court, a reasonable jury could not find that Defendant Chambers-Smith knowingly acquiesced in the denial of Plaintiff's transfer.

Still more, Plaintiff fails to establish all elements of a retaliation claim. Regarding the first element, Plaintiff's prior civil rights litigation is clearly protected conduct. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). But Plaintiff has not submitted evidence sufficient to support that he suffered an adverse action, nor that the denial of his transfer was causally connected to his protected conduct. "[A]n adverse action is one that would deter a person of ordinary firmness from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d 378, 396 (internal quotation marks and citation omitted). Plaintiff claims that the denial of his transfer request constitutes adverse action. Ordinarily, a transfer to another prison—or, by extension, a denied transfer to another prison—does not constitute an adverse action, unless it would result in foreseeable, negative consequences to the particular prisoner. *Johnson*, 2018 WL 4488737, at *3 (collecting cases). Plaintiff maintains that the negative consequences of his denied transfer were a greater risk of exposure to COVID-19 and prisoner violence. (Doc. 12, ¶ 17). Yet, Plaintiff has not submitted evidence to support that his risk of exposure to COVID-19 and violence would have been lesser at

another institution, nor that he as an individual was under a particular risk at TCI, as opposed to the generalized risk of the entire incarcerated population. This is distinct from the particularized showings of collateral consequences that plaintiffs have made to show why a transfer is adverse. *See, e.g.*, *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005) (plaintiff adduced sufficient evidence for a reasonable jury to find that he was unable to pay his attorney without a higher-paying job which was only available at the prison from which he was transferred).

Additionally, Plaintiff has not provided any evidence supporting a causal connection between his transfer denial and his prior litigation. Plaintiff has not supported the latter two elements of his retaliation claim. Nor has he established that Defendant Chambers-Smith was personally involved in the alleged retaliation. For these reasons, a reasonable jury could not return a verdict for Plaintiff on this claim, and Defendant Chambers-Smith is entitled to summary judgment.

## V. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 58) be **GRANTED** and Plaintiff's parole consideration claims be **DISMISSED**. The Undersigned further **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. 54) be **GRANTED**, and judgment be entered in favor of Defendants on all remaining claims.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or

24

modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: January 11, 2023                           s/ Kimberly A. Jolson
                                                 KIMBERLY A. JOLSON
                                                 UNITED STATES MAGISTRATE JUDGE